UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **KRISTI BEAL,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:20-CV-00951-NCC |
| | ) |
| **KILOLO KIJAKAZI,**[1] | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the applications of Kristi Beal ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*.  Plaintiff has filed a brief in support of the Complaint (Doc. 20) and Defendant has filed a brief in support of the Answer (Doc. 27).  The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 9).

## I. PROCEDURAL HISTORY

Plaintiff filed her application for DIB on July 28, 2017 (Tr. 215-16).  Plaintiff was initially denied on October 19, 2017, and she filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 147-53).  After a hearing, by decision dated June 25, 2019, the ALJ found Plaintiff not disabled (Tr. 76-93).  On May 28, 2020, the Appeals Council

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi shall be substituted for former Commissioner Andrew Saul as the defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

denied Plaintiff's request for review (Tr. 1-6). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2023, and that Plaintiff has not engaged in substantial gainful activity ("SGA") since May 14, 2017, the alleged onset date (Tr. 81). In doing so, the ALJ noted that Plaintiff worked after the alleged disability onset date but that the work activity did not rise to the level of SGA; Plaintiff "works part-time as a home health aide for her mother" (Tr. 81, 10102, 250-51). The ALJ found Plaintiff has the severe impairments of obesity, major depressive disorder, generalized anxiety disorder, obsessive-compulsive disorder, Asperger's disorder, post-traumatic stress disorder, dysthymic disorder, borderline personality disorder, and bipolar disorder, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 81-82). After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform light work with the following limitations (Tr. 83). Plaintiff is able to lift up to 20 pounds occasionally and lift/carry up to ten pounds frequently (*Id.*). Plaintiff is able to stand/walk for about six hours and sit for up to six hours in an eight-hour workday, with normal breaks (*Id.*). Plaintiff is unable to climb ladders, ropes, or scaffolds (*Id.*). She should avoid all exposure to unprotected heights and use of dangerous moving machinery (*Id.*). Plaintiff is able to perform simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements, involving only simple work-related decisions and routine workplace changes (*Id.*). Plaintiff is able to perform work that is isolated from the public, with only occasional supervision and only occasional interaction with coworkers

(*Id.*). The ALJ found Plaintiff unable to perform any past relevant work but that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform including cleaner/housekeeper, marking clerk, and photocopy machine operator (Tr. 87-88). Thus, the ALJ concluded that Plaintiff has not been under a disability from May 14, 2017, through the date of the decision (*Id.*).

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d).

If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history.  *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work.  20 C.F.R. §§ 416.920(f), 404.1520(f).  The burden rests with the claimant at this fourth step to establish his or her RFC.  *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled.").  The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past.  20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work.  20 C.F.R. §§ 416.920(g), 404.1520(g).  At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC.  *Steed*, 524 F.3d at 874 n.3.  If the claimant meets these standards, the ALJ will find the claimant to be disabled.  "The ultimate burden of persuasion to prove disability, however, remains with the claimant."  *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).  *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five.").  Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence.  *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984).  "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's

conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Id.* Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

## IV. DISCUSSION

In her appeal of the Commissioner's decision, Plaintiff raises two issues. First, Plaintiff asserts that the ALJ failed to provide a narrative discussion describing how the evidence supports each conclusion (Doc. 20 at 3-10). Second, Plaintiff argues that the ALJ improperly discounted the opinion of Plaintiff's mental health providers (*Id.* at 10-15). Of note, Plaintiff does not raise any argument as it relates to her physical impairments, as such the Court will not address them here. For the following reasons, the Court finds that Plaintiff's arguments are without merit, and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

**A. Narrative Discussion**

First, Plaintiff asserts that the ALJ failed to provide a narrative discussion describing how the evidence supports each conclusion (Doc. 20 at 3-10). Specifically, Plaintiff argues that the

ALJ fails to explain how she determined Plaintiff's RFC limitations as they relate to her mental health impairments (Doc. 20 at 4).

An "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *7 (July 2, 1996). "In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." SSR 96–8p at *7. "Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted." *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)).  Nor is there a requirement that "an ALJ follow each RFC limitation with a list of specific, supporting evidence." *Wilfong v. Berryhill*, No. 4:17-CV-2747-SNLJ, 2018 WL 4489453, at *4 (E.D. Mo. Sept. 19, 2018).  While a summary of the medical record does not fulfill the narrative discussion requirement, SSR 96-8p requires only that the evidence, both medical and non-medical, be discussed in a way that would support each conclusion, not that each conclusion must be individually discussed and independently supported. *Id.; Pierce v. Saul*, No. 4:19 CV 1886 ACL, 2020 WL 5642311, at *8 (E.D. Mo. Sept. 22, 2020).

The Court finds the ALJ's opinion provides a sufficient narrative of the medical evidence relied upon to support the limitations in the RFC and reversal on this basis is not warranted.  The ALJ took the plaintiff's medical records and subjective allegations into account in making her RFC finding.  First, the ALJ addressed Plaintiff's self-reports, noting that that Plaintiff testified

6

that her problems started in 2017, when she began experiencing daily panic attacks (Tr. 84, 104-05).  Plaintiff also testified, as noted by the ALJ, that being around other people, tall buildings, and many cars trigger anxiety; she is frequently distracted; and suffers from obsessive compulsive behavior (Tr. 84, 106, 109-11).  The ALJ highlighted that Plaintiff testified that she is unable to work because of her inability to focus, complete tasks, and be around others on a consistent basis (Tr. 84, 104).  Nevertheless, the ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms not to be entirely consistent with the medical evidence and other evidence in the record (Tr. 84-85).

      The ALJ found that the record supports a finding that Plaintiff's impairments of major depressive disorder, generalized anxiety disorder, obsessive-compulsive disorder, Asperger's disorder, post-traumatic stress disorder, dysthymic disorder, borderline personality disorder, and bipolar disorder are severe impairments (Tr. 85).  Then the ALJ detailed Plaintiff's mental health treatment as follows.  The ALJ noted that Plaintiff was initially evaluated in early July 2017 at SEMO Behavioral Health ("SEMO") (Tr. 85, 607-09).  At her initial evaluation, Plaintiff reported that she was miserable and felt hopeless, helpless, and apathetic (Tr. 85, 607).  Plaintiff reported anxiety resulting in a rapid heartbeat, hot flashes, trouble breathing, chest tightness, and tight throat (Tr. 85, 607).  Plaintiff was diagnosed with major depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder (Tr. 608).  Plaintiff was not prescribed any medication for her impairments (*See* Tr. 607-09).  It is unclear from the record whether a return appointment was scheduled (*See id.*).  However, Plaintiff did not return to SEMO after her initial visit because, according to Plaintiff, the program had lost its funding (Tr. 85, 105-06, 123-24, 418).  The record, perhaps incorrectly, suggests otherwise; "Discharge appears to be due to [Plaintiff] withdrawing from treatment[.]" (Tr. 607).

7

Later in July 2017, Plaintiff began treatment at Iron County Medical Clinic ("Iron County")[2] after being encouraged to come in after a phone conversation in which Plaintiff sounded as if she was having suicidal ideations (Tr. 85, 407).  At her initial visit, as noted by the ALJ, Plaintiff reported depression, sleep disturbances, restless sleep, anxiety, and suicidal thoughts (Tr. 85, 405).  Plaintiff was prescribed Zoloft and was referred to counseling for post-traumatic stress disorder (Tr. 85, 406).  Plaintiff began regular behavioral health counseling sessions thereafter with Charles Robson, LCSW (Tr. 348, 360).  Mr. Robson reported that Plaintiff had poor eye contact, sad mood, anxious, sullen and constricted affect and suggested that her Zoloft prescription be increased (Tr. 351).  Plaintiff was also referred and began seeing Dr. Georgia Jones, MD, a psychiatrist, also at Iron County (Tr. 360, 364).  Plaintiff continued treatment through the period at Iron County, albeit somewhat sporadically and occasionally with different providers (*See, e.g.,* Tr. 452 (detailing her mental health treatment at Iron County)).

The ALJ found "[t]reatment records over the remainder of the period showed [Plaintiff] at times disheveled, oppositional, and/or argumentative, with a sad mood, an irritable mood, and guarded behavior" (Tr. 85, 431, 501, 529).  Thus, the ALJ concluded that Plaintiff's "mental impairments support limitations as stated in her residual functional capacity.  However, no further limitations are warranted" (Tr. 85).  As further support for these conclusions, the ALJ noted that Plaintiff denied suicidal ideations at her initial visit at Iron City and subsequent visits (Tr. 85, 401-02, 407).  "Other than a sad mood and an anxious, sullen, and constricted mood, a mental examination performed at the end of that month was generally unremarkable" (Tr. 85, 399).  By September 2017, as the ALJ noted, Plaintiff reported feeling better and that she was

---

[2] Plaintiff refers to Iron County frequently by its primary name, Missouri Highland Health Care or "Missouri Highlands" (*See* Tr. 123).

not nearly as depressed as before (Tr. 85, 391). The ALJ also reviewed the generally normal examination findings during Plaintiff's consultative examination and noted that "[s]ubsequent mental status examinations frequently found [Plaintiff] to display normal behavior" (Tr. 86) (*See, e.g.,* Tr. 419-20, 459, 474, 481, 489-90).

On October 17, 2017, Plaintiff was evaluated during a psychological consultative examination with Dr. Lauretta V. Walker, Ph.D. ("Dr. Walker"), a licensed psychologist (Tr. 85, 417-421). Plaintiff reported that she was not good with people, and that she gets chills, begins to sweat, and feels as if she is going to pass out if she is around a group of people (Tr. 85, 417). Dr. Walker noted that Plaintiff did not make eye contact for more than 30 minutes and Plaintiff's affect was flat and mood was depressed (Tr. 85, 419). However, Plaintiff was fully oriented; had a good fund of information; was able to perform simple arithmetic, repeat six digits forward twice, and repeat four digits backwards twice; and was able to recall three words after five minutes of distraction (Tr. 86, 419-20).

The ALJ also noted that Plaintiff's activities of daily living indicated that she was not, perhaps, as limited as she reported. Specifically, the ALJ found that "[d]espite her ongoing symptoms, [Plaintiff] is able to work part-time as a home healthcare worker for her disabled mother" (Tr. 86, 101-02). The ALJ also noted that Plaintiff "was recently able to drive to St. Louis, attend a festival, and drive home by herself" and that Plaintiff "plays Dungeons and Dragons with friends, in person, twice per week, for four hours at a time" (Tr. 85-87, 106-07, 430). Thus, the ALJ concluded Plaintiff's "activities suggest a greater level of functioning as stated in her residual functional capacity" (Tr. 87).

The ALJ also described the weight she gave to the medical opinions of record, including three that specifically addressed Plaintiff's mental health impairments (Tr. 86-87). In doing so,

9

the ALJ noted how the extent to which these opinions were consistent with the record as detailed above. For example, the ALJ found the opinion of Linda Skolnick, Psy.D., a state agency medical consultant, to be "somewhat persuasive" as her finding that Plaintiff could have minimal contact with the public, coworkers, and supervisors not to be "entirely consistent with the record as a whole" as Plaintiff reported difficulty getting along with others and the records found her to be oppositional, sad and irritable at times (Tr. 86, 136-42, 431, 501, 529). Based on this analysis, the ALJ explicitly limited Plaintiff to work that requires no public contact (Tr. 86).

Thus, the ALJ adequately discussed the relevant medical and nonmedical evidence, why she believed it contradicted Plaintiff's allegations of disability, and explained how she determined her RFC assessment. *Winkler v. Saul*, No. 2:19 CV 55 ACL, 2020 WL 5632505, at *6 (E.D. Mo. Sept. 21, 2020). *See also Swain v. Berryhill*, No. 4:16-CV-00326-JAR, 2017 WL 2132479, at *5 (E.D. Mo. May 17, 2017) (rejecting argument that the ALJ failed to provide appropriate narrative statement explaining how medical evidence supported her RFC because ALJ is "not required to refute every alleged limitation").

**B. Medical Opinion Evidence**

Second, Plaintiff argues that the ALJ improperly discounted the opinion of Plaintiff's mental health providers (Doc. 20 at 10-15). Specifically, Plaintiff asserts that the opinion of Heidi Allen, LCSW and Judith Medley, FNP is supported by and consistent with the record and thus the ALJ erred in her failure to address the other persuasive factors in 20 C.F.R. § 404.1520c(c)(3)-(c)(5).

Because Plaintiff filed her application after March 27, 2017, the new Social Security regulations regarding the evaluation of medical evidence applied to her case. 20 C.F.R. § 404.1520c. Under the new regulations, an ALJ is no longer required to "give any specific

evidentiary weight, including controlling weight, to any medical opinion(s)," including those from treating physicians.  20 C.F.R. § 404.1520c(a).  Rather, the ALJ is to consider factors in determining how persuasive to find medical opinions and prior administrative medical findings.  20 C.F.R. § 404.1520c(b).  The two most important factors an ALJ must consider in evaluating a medical opinion are supportability and consistency.  20 C.F.R. § 404.1520c(b)(2).  Additional factors that an ALJ may, but is not required to, consider in evaluating a medical opinion are the relationship with the claimant, the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, the examining relationship, specialization, and additional factors that tend to support or contradict a medical opinion or prior administrative medical finding.  20 C.F.R. § 404.1520c(c)(3)-(5).  An ALJ will address these other factors if she finds that two medical opinions are not exactly the same but are equally persuasive by being equally well-supported and consistent with the record.  20 C.F.R. § 404.1520c(b)(3).

Under the new regulations, a "medical opinion" is a statement from a medical source about what an individual can still do despite her impairments, and includes limitations or restrictions about the ability to perform physical, mental, sensory, and/or environmental demands of work.  20 C.F.R. § 404.1513(a)(2).  A medical opinion does not include judgments about the nature and severity of an individual's impairments, medical history, clinical findings, diagnosis, response to prescribed treatment, or prognosis.  20 C.F.R. § 404.1513(a)(3).

On March 15, 2019, Heidi Allen, LCSW ("Allen") and Judith Medley, FNP ("Medley") completed a Medical Source Statement (Tr. 624-27).  Allen and Medley indicate the Plaintiff was diagnosed with generalized anxiety disorder, borderline personality disorder and, "per Dr. Jones" Aspergers (Tr. 627).  As a result of these diagnoses, Allen and Medley indicated the

11

Plaintiff displayed restlessness and irritability, is easily fatigued, has difficulty concentrating, suffers from sleep disturbance, has suicidal ideations, has unstable self-image, and suffers from panic attacks (*Id.*).  Allen and Medley generally found Plaintiff to have marked limitations. [3] Specifically, Allen and Medley determined Plaintiff had marked limitations in her ability to: initiate and complete tasks in a timely manner; ignore or avoid distractions; sustain ordinary routine and regular attendance; use reason and judgment to make work related decisions; function independently; work a full day without needing more than the allotted number or length of rest periods; distinguish between acceptable and unacceptable work performance; regulated emotions, control behavior and maintain wellbeing in a work setting; keep social interactions free of excessive irritability, argumentativeness, sensitivity or suspiciousness; respond appropriately to requests, criticism, suggestions, correction and challenges (Tr. 624-25).  Allen and Medley found Plaintiff moderately limited in her ability to follow one or two step oral instructions to carry out a task, to understand and learn terms, instructions, and procedures, and to maintain socially acceptable behavior and not limited in her ability to ask simple questions or request help (*Id.*).  Allen and Medley further opined that Plaintiff would be late to work or need to leave work early three times a month or more; would miss work three times a month or more (Tr. 626).  Allen and Medley also indicated that Plaintiff may have difficulty working at any job on a full-time sustained basis because Plaintiff is unable to effectively control her panic attacks and mood and Plaintiff has little insight to assist her (Tr. 627).

---

[3] The Medical Source Statement provided the definitions for "moderate" and "marked" defining "moderate" as "[f]unctioning in this area independently, appropriately, effectively, and on a sustained basis is fair" and "marked" as "[f]unctioning in this area independently, appropriately, effectively, and on a sustained basis is **seriously limited**" (Tr. 624) (emphasis in original).

In accordance with the standard set forth in 20 C.F.R. § 404.1520c(b)(2), the ALJ found Allen and Medley's opinion "not persuasive" as it is "not consistent with the record as a whole" (Tr. 86-87).  The ALJ specifically found that Plaintiff's "activities suggest a greater level of functioning as stated in her residual functional capacity" and noted Plaintiff's work, her ability to attend a festival in St. Louis, and her regular gatherings to play Dungeons and Dragons (Tr. 87, 106-07).  *See Ellis v. Barnhart*, 392 F.3d 988, 995 (8th Cir. 2005) (proper to consider evidence of daily activities when discounting physician's opinion of claimant's limitations).  Furthermore, as addressed in significant detail above, the ALJ reviewed Plaintiff's medical records and, although she did not specifically highlight those records which she found inconsistent with Allen and Medley's opinion, the ALJ's overview included records clearly inconsistent with the extreme limitations opined by Allen and Medley.  For example, the ALJ reviewed the generally normal examination findings during Plaintiff's consultative examination, as noted above and noted that "[s]ubsequent mental status examinations frequently found [Plaintiff] to display normal behavior" (Tr. 86) (*See, e.g.,* Tr. 419-20, 459, 474, 481, 489-90).  Having determined that Allen and Medley's opinion was inconsistent with the record as a whole and not equally as persuasive as the other opinion evidence of record, the ALJ was not required to articulated how she considered the other most persuasive factors in paragraphs (c)(3) through (c)(5).  *McCoy v. Saul*, No. 4:19-cv-00704-NKL, 2020 WL 3412234, at *9 (W.D. Mo. June 22, 2020) ("[B]ecause the ALJ did not find the opinions of [two physicians] to be equally as persuasive as the consultants', he was not required to 'articulate how [he] considered the other most persuasive factors in paragraphs (c)(3) through (c)(5).").  Therefore, the Court finds that the ALJ properly evaluated the opinion of Allen and Medley and that the RFC determination is supported by substantial evidence.

## V. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED**, with prejudice.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 29th day of September, 2021.

                                                  /s/ Noelle C. Collins
                                               NOELLE C. COLLINS
                                               UNITED STATES MAGISTRATE JUDGE